**Floyd NELSON, Plaintiff,**

v.

**G.J. GIURBINO, et al., Defendants.**

**No. CIV. 04–CV0758–L(AJB).**

United States District Court,
S.D. California.

Oct. 20, 2005.

---

Floyd Nelson, Pelican Bay State Prison, Crescent City, CA, Pro se.

Deputy Attorney General G. Michael German, Office of the California Attorney General, San Diego, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION; GRANTING WITHOUT PREJUDICE MOTION TO DISMISS [doc. # 18]; and GRANTING LEAVE TO AMEND

LORENZ, District Judge.

Plaintiff Floyd H. Nelson, a California state proceeding *pro se,* filed this action under 42 U.S.C. § 1983. Plaintiff alleges his First Amendment rights under the United States Constitution were violated by denying him access to internet generated legal materials and by thereafter denying his appeals regarding the alleged constitutional violations while he was incarcerated at Pelican Bay State Prison. The Honorable Anthony J. Battaglia issued a Report and Recommendation ("Report") in accordance with 28 U.S.C. § 636(b)(1) recommending defendants' motion to dismiss the complaint be granted. Neither party filed objections to the Report notwithstanding having the opportunity to do so.

The district court's role in reviewing a Magistrate Judge's report and recommendation is set forth in 28 U.S.C. § 636(b)(1). Under this statute, the district court "shall make a *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Under this statute, "the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made,* but not otherwise." *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc* ), *cert. denied,* 540 U.S. 900, 124 S.Ct. 238, 157 L.Ed.2d 182 (2003).

As noted above, neither party has objected to the Report. Accordingly, the Court will adopt the Report and Recommendation in its entirety.

Based on the foregoing, **IT IS ORDERED** granting without prejudice defendants' motion to dismiss the complaint. **IT IS FURTHER ORDERED** granting plaintiff leave to file an amended complaint in accordance with this Order and the Report. **IT IS FURTHER ORDERED** that if plaintiff desires to file an amended complaint, he shall do so within 30 days of the filing of this Order. Failure to file an amended complaint within the time provided shall result in dismissal of this action and the closing of the case without further notice to the parties.

**IT IS SO ORDERED.**

Report and Recommendation Granting Motion to Dismiss [Doc. No. 18]

BATTAGLIA, United States Magistrate Judge.

Plaintiff, a California state prisoner proceeding pro se, brings this action under 42 U.S.C.1983 alleging that Defendants denied him access to internet generated legal materials, in violation of the First Amendment and the District Court injunction in *Clement v. California Department of Corrections,* 220 F.Supp.2d 1098 (9th Cir. 2002). Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages from Defendants. Defendants now move to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' motion has been referred to Magistrate Judge Battaglia for issuance of a report and recommendation, pursuant to Local Civil Rule 72.3(f). Plaintiff filed an Opposition and Defendants filed a Reply. The Court finds this motion appropriate for submission on the papers and without oral argument, pursuant to Local Rule

7.1(d)(1). For the reasons set forth herein, it is recommended that Defendants' Motion to Dismiss be GRANTED without prejudice and with leave to amend.

### Factual Background

Plaintiff is currently an inmate at Pelican Bay State Prison. He alleges that, while incarcerated at Centinela State Prison, Defendants violated his constitutional rights by denying him access to internet generated legal materials and by thereafter denying his appeals regarding the alleged constitutional violations.

On March 20, 2001, Defendant Larry Witeck, Deputy Director of Institutions Division, issued a memorandum entitled "Appellate Court Ruling on Internet Mail" (the '2001 Memorandum') to state prisons and personnel. Compl., ¶ 12. The 2001 Memorandum addressed the recent California Court of Appeals decision in *In re Aaron Collins on Habeas Corpus* upholding Pelican Bay's policy prohibiting inmate access to internet generated materials. *In re Aaron Collins,* 86 Cal.App.4th 1176, 1186, 104 Cal.Rptr.2d 108 (Cal.Ct. App.2001). The California Court of Appeals found that Pelican Bay's internet policy was "reasonably related to legitimate penological interests" and therefore constitutionally permissible. *Id.* The 2001 Memorandum further instructed each state prison facility to amend and align its policies and procedures regarding internet generated materials with the decision in *In re Aaron Collins.* Mot. to Dismiss, exh. D. In response to the 2001 Memorandum, Defendant G.J. Giubrino, Warden of Centinela State Prison, amended Centinela's Operational Procedures to prohibit inmate access to mail containing information generated from the internet. Compl., ¶ 13.

On June 6, 2002, Defendant Asuncion, Captain, Centinela State Prison, issued Plaintiff a Notice of Disapproval disallowing a "legal resource guide" downloaded from the internet. Compl., ¶ 14. On June 16, 2002, Plaintiff filed a first-level appeal, log no. CEN–C–02–0746 (the '0746 appeal), requesting access to the legal resource guide. Compl., ¶ 15. On June 17, 2002, Defendants D.C. Johnson and J.C. Stokes denied the appeal, stating that "internet-generated material[s][are] not allowed to inmates within the CDC", Compl., ¶ 16.

Plaintiff subsequently submitted a second-level appeal and again requested access to the legal resource guide. On August 7, 2002, Defendants Giubrino and Johnson denied Plaintiff's second level appeal, again stating that "internet materials [are] not allowed to inmates within the CDC". Compl., ¶ 19.

During the '0746 appeal process, Plaintiff received a second Notice of Disapproval, dated July 18, 2002, which again disallowed Plaintiff access to an internet generated legal resource guide, Compl., ¶ 18. Plaintiff alleges that on July 19, 2002, he filed an informal level inmate appeal requesting access to the legal resource guide. Defendants deny ever receiving this appeal and assert that no copy of this appeal exists in their records; Plaintiff has not submitted any documentation to support the existence of this appeal. Plaintiff nonetheless contends that his July 19, 2002 appeal was denied at the informal-level due to 'time constraints'. Compl., ¶ 23.

On September 9, 2002, the United States District Court issued a permanent, statewide injunction in *Clement v. California Department of Corrections* which enjoined the California Department of Corrections (CDC) "from enforcing any policy which prohibited California inmates from receiving mail because it contained internet generated materials". 220 F.Supp.2d 1098

(N.D.Cal.2002). On September 20, 2002, in response to the District Court injunction in *Clement*, W.A. Duncan, Deputy Director of the CDC, issued a memorandum which instructed CDC facilities to permit inmates access to incoming mail containing internet generated material. Compl., ¶ 21. At the time this memorandum issued, Plaintiff's '0746 appeal was pending, awaiting Director Level Appeal review.

On September 27, 2002, Defendant N. Grannis denied Plaintiff's Director Level Appeal stating that "internet generated materials [are] not allowed to inmates within the CDC." Compl., ¶ 22. Having exhausted all internal appeals processes, Plaintiff filed a complaint on April 13, 2004. Meanwhile, on April 20, 2004, the Ninth Circuit affirmed the District Court decision in *Clement*. 364 F.3d 1148, 1153 (9th Cir.2004). The Court found the CDC internet policy unconstitutional and upheld the District Court injunction prohibiting the CDC from further enforcement of its internet policy. *Id.* at 1152. On July 14, 2004, Judge Lorenz granted Plaintiff's motion to proceed in forma pauperis, however, dismissed Plaintiff's complaint for failure to state a claim upon which relief could be granted. Plaintiff was given 45 days to file an amended complaint addressing the deficiencies in his initial pleading. On August 9, 2004, Plaintiff filed his First Amended Complaint which is the matter presently before this Court.

### Discussion

Defendants move to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing Plaintiff's complaint fails to state a claim upon which relief can be granted. A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim can only be dismissed if it "ap-

pears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *N.L. Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Where a plaintiff appears in propia persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 623 (9th Cir.1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992). In giving liberal interpretation to pro se civil rights complaint, however, the court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the University of Alaska,* 673 F.2d 266, 268 (9th Cir.1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*

### 1. Plaintiff's Request for Declaratory and Injunctive Relief

Plaintiff requests declaratory and injunctive relief regarding Defendants' institutional policy which prohibits inmate ac-

cess to internet generated legal materials. Specifically, Plaintiff asks the Court to declare Defendant's policy unconstitutional and to enjoin Defendants and their agents and employees from enforcing the policy. In response, Defendants allege that Plaintiff's request for declaratory and injunctive relief are moot in light of the District Court and Ninth Circuit decisions in *Clement v. CDC* and, therefore, must be dismissed. This Court is inclined to agree.

■■■ "Generally, an action is mooted when the issues presented are no longer live and the parties lack a legally cognizable interest for which the courts can grant a remedy." *Alaska Ctr. For Env't v. United States Forest Service*, 189 F.3d 851, 854 (9th Cir.1999); *see also Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001); *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir.2003). A plaintiff's claim for declaratory judgment also cannot proceed if judicial pronouncement, as it would relate to the plaintiff, would be an advisory opinion prohibited by the Constitution's case or controversy requirement. *McQuillion v. Schwarzenegger*, 369 F.3d 1091 (9th Cir.2004) (citing U.S. CONST. art. III); *see also Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

■■ Here, Plaintiff's request for declaratory and injunctive relief is moot in light of the District Court and Ninth Circuit decisions in *Clement v. CDC*, as the relief Plaintiff seeks has already been granted. In *Clement*, the Ninth Circuit affirmed a District Court decision, which held that a CDC policy that prohibited inmates from receiving internet generated materials was unconstitutional. *Clement*, 364 F.3d at 1153. The Court found that the CDC policy had no rational connection with the CDC's asserted penological interest. *Id.* at 1152. The Court also affirmed a District Court injunction which enjoined the

CDC "from enforcing any policy prohibiting California inmates from receiving mail because it contained Internet generated information". *Id.* at 1153. The injunction applied to all prisons within the CDC, including Centinela State Prison, where Plaintiff is housed. *Id.* Accordingly, the issue upon which Plaintiff seeks declaratory judgment and injunctive relief has been resolved by the Ninth Circuit decision in *Clement* and any further declaratory or injunctive ruling by this Court would constitute an advisory opinion. As such, this Court recommends that Plaintiff's request for declaratory and injunctive relief be dismissed.

## 2. Plaintiff's Allegations Regarding Compensatory Damages

Plaintiff seeks compensatory damages from Defendants, alleging that Defendants' enforcement of the CDC policy prohibiting inmate access to internet generated materials constitutes a violation of his First Amendment right. In response, Defendants allege that they are entitled to qualified immunity and therefore, are not subject to civil liability in connection with Plaintiff's complaint.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

Under *Saucier v. Katz*, the Court established a two step approach for addressing claims of qualified immunity. 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The first step in the qualified im-

munity analysis is "to consider the materials submitted in support of, and in opposition to, summary judgment, in order to decide whether a constitutional right would be violated if all facts are viewed in favor of the party opposing summary judgment." *Jeffers v. Gomez,* 267 F.3d 895, 909 (9th Cir.2001). "If no constitutional violation is shown, the inquiry ends." *Cunningham v. City of Wenatchee,* 345 F.3d 802, 810 (9th Cir.2003). On the other hand, if "the parties' submissions" create a triable issue of whether a constitutional violation occurred, the second question is "whether the right was clearly established when 'it would be clear to a reasonable [government actor] that his conduct was unlawful in the situation he confronted.'" *Id.* at 202.

■ In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier,* 533 U.S. at 199–201, 121 S.Ct. 2151 (2001). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806. Thus, the Supreme Court has "repeatedly [ ] stressed the importance of resolving immunity questions at the earliest possible state in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

**A. Do the Facts Alleged by Plaintiff Demonstrate a Violation of Constitutional Right**

■ To determine whether a government official is entitled to qualified immunity, the court first must consider the threshold question, which is: Taken in the light most favorably to the party asserting the injury, do the facts alleged show that the official's conduct violated a constitutional right? *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151 (2001); *see also Robinson v. Solano County,* 278 F.3d 1007, 1013 (9th Cir.2002) (en banc). In performing the initial inquiry, the Court is obligated to accept the facts as alleged by the non-moving party, but not necessarily their application of the law to the facts. *Martin v. City of Oceanside,* 360 F.3d 1078, 1082 (9th Cir.2004). The issue is not whether the non-moving party states a claim for a violation of their Constitutional rights, but rather whether the officers actually violated a constitutional right. *Id.* (emphasis original). *Cf. Saucier,* 533 U.S. at 201, 121 S.Ct. 2151 (holding that the "threshold inquiry," assuming as true the facts alleged by the injured party, is whether the "officer's conduct violated a constitutional right[.]"). If no constitutional right was violated, the inquiry is at an end, and the official is entitled to qualified immunity. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *see also Robinson,* 278 F.3d at 1013.

■ Here, Plaintiff alleges that, by denying access to internet generated legal materials, Defendants violated his First Amendment constitutional rights. This Court is inclined to agree. In *Clement v. CDC,* the Ninth Circuit held that a CDC policy which prohibited inmates from receiving internet generated materials was unconstitutional. *Clement,* 364 F.3d at 1153. The Ninth Circuit held that the CDC's blanket prohibition of internet-based materials had no rational connection

with the penological interests which the policy aimed to protect. *Id.* at 1152. In light of the decision in *Clement,* and viewing the facts most favorably to Plaintiff, this Court finds that Defendants' prohibition of internet generated legal materials constitutes a violation of Plaintiff's First Amendment rights. That the District Court decision in *Clement* issued after Defendants' alleged conduct does not change the fact that Plaintiff suffered a constitutional violation. *See U.S. v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 739, 160 L.Ed.2d 621 (2005) (applying holding on constitutional rights retroactively to "all cases on direct review"); *see also Griffith v. Kentucky,* 479 U.S., 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("A new rule for conduct of criminal prosecution is applied retroactively to all cases... pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past").

**b. Was the Constitutional Right Clearly Established**

■■■ Under the *Saucier Analysis,* once a Court determines that a constitutional violation has occurred, the "next...step is to ask whether the [constitutional] right was clearly established." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. This is a specific, not a general inquiry and the plaintiff bears the burden of showing that the right allegedly violated was clearly established. *See Collins v. Jordan,* 110 F.3d 1363, 1369 (9th Cir.1996). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. "If the controlling law is not clearly established, a reasonable person would not be expected to know how to structure his conduct in order to avoid liability." *Romero v. Kitsap County,* 931

F.2d 624, 628 (9th Cir.1991) (*citing Todd v. United States,* 849 F.2d 365, 368–69 (9th Cir.1988)).

■■■ A right is clearly established "[i]f the only reasonable conclusion from binding authority [was] that the disputed right existed." *Blueford v. Prunty,* 108 F.3d 251, 255 (9th Cir.1997). "The contours of the right must be sufficiently clear that [at the time the allegedly unlawful action is taken] a reasonable official would understand that what he was doing violates that right." *Mendoza v. Block,* 27 F.3d 1357, 1361 (9th Cir.1994) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034). For a right to be clearly established, "the very action in question" need not "ha[ve] previously been held unlawful"; instead, the "unlawfulness must be apparent" in light of pre-existing law. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. "If the [defendant's] mistake as to what the law requires is reasonable, however, the official is entitled to the qualified immunity defense." *Id.* at 2158. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■■■ Here, Plaintiff alleges that his right to access internet generated materials is clearly established. To support his allegations, Plaintiff cites to *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and *Prison Legal News v. Cook,* 238 F.3d 1145, 1149 (9th Cir.2001), for the dual propositions that inmates' First Amendment rights survive incarceration and that inmates' have a constitutional right to receive mail. Plaintiff also refers this Court to an uncited, unpublished order allegedly issued by the Del Norte Superior Court which states, "E-mail or other internet-related material may be received by inmates if sent to the

prison via U.S. mail. All internet related materials received by way of U.S. mail shall be treated as non-confidential mail and shall be governed by CCR § 3130 et. seq." Opp. to Mot. to Dismiss, pg. 5, ln. 19–24. Relying on these cases and decisions, Plaintiff asserts that his constitutional right to access internet generated materials was clearly established and concludes that Defendants are not entitled to qualified immunity. The Court disagrees.

The District Court and Ninth Circuit decisions in *Clement* constitute this Circuit's first articulation of prison inmates' right to access internet generated material. Prior to April 20, 2004, the date upon which the Ninth Circuit decision in Clement issued, the California Court of Appeal decision in *In re Aaron Collins*, was the controlling precedent on the issue of an inmate's right to access internet generated materials. In *In re Aaron Collins*, the Court upheld a CDC policy which prohibited inmate access to internet generated materials. *In re Aaron Collins*, 86 Cal. App.4th 1176, 1186, 104 Cal.Rptr.2d 108 (2001). The Court found that the CDC policy was rationally related to legitimate penological interests and therefore did not violate inmates' First Amendment rights. *Id.* Relying on the decision in *In re Aaron Collins*, the CDC issued the 2001 Memorandum to state prisons and personnel which reaffirmed the CDC policy that prohibited inmates from receiving internet generated materials. Compl., ¶ 12.

Under these circumstances, the California Court of Appeals decision in *In re Aaron Collins* and the 2001 Memorandum would lead a reasonable law enforcement officer to believe that enforcement of the CDC policy prohibiting inmate access to internet materials was proper and constitutional. Prior to the decision in *Clement*, a reasonable law enforcement officer would not understand that such conduct was "un-

lawful in the situation confronted". Accordingly, this Court finds that prior to the decision in *Clement*, prison inmates' Constitutional right to access internet generated material was not clearly established. As a result, Defendants would be entitled to qualified immunity with regard to allegations 2(a) through 2(g) in Plaintiff's First Amended Complaint. The Court recommends that these allegations be dismissed without prejudice and with leave to amend.

█ Although the foregoing analysis resolves the issue of qualified immunity in regard to conduct occurring before the District Court decision in *Clement*, this Court must still determine whether any alleged conduct occurring after the decision in *Clement* gives rise to civil liability. Specifically, the Court must consider whether Defendant Grannis's decision regarding the denial of the Director Level Appeal is entitled to qualified immunity.

█ Just as Plaintiff's request for declaratory and injunctive relief before this Court was moot in light of the District Court decision in *Clement*, Plaintiff's Director Level Appeal was also moot in light of the District Court decision in *Clement*, because the relief Plaintiff sought from the Director Level Appeal had already been granted through the District Court injunction in *Clement*. As no additional relief could be granted, Defendant Grannis had no choice but to deny Plaintiff's Director Level Appeal. Although Defendant Grannis's rationale for denying the Director Level Appeal is inconsistent with the Court's analysis, his decision regarding the appeal was ultimately correct and his erroneous reasoning was harmless. Furthermore, since there is no legal entitlement to a grievance procedure, Plaintiff's allegations regarding Defendant Grannis's Director Level Appeal Denial does not state a claim upon which relief can be

granted. *See Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988) (holding that "there is no legitimate claim of entitlement to a grievance procedure"); *see also Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993) (prison official's involvement and actions in reviewing and/or investigating prisoner's administrative appeal not a basis for liability under a § 1983 action).

Since Plaintiff's fails to allege a violation of a clearly established constitutional right, the Court finds that Defendant Grannis is entitled to qualified immunity.

### 3. Plaintiff's Allegations Regarding Punitive Damages

 In addition to compensatory damages, Plaintiff seeks punitive damages for Defendants' alleged violation of his constitutional rights. Punitive damages are available under 42 U.S.C. § 1983. *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 17, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). Punitive damages are assessed against a defendant to further society's interest in punishing and deterring certain conduct that invades upon the rights of others. *See Smith v. Wade,* 461 U.S. 30, 54, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ("[S]ociety has an interest in deterring and punishing all intentional or reckless invasions of the rights of others"). Punitive damages may be available even in circumstances where the plaintiff is unable to show compensable injury. *Id.* at 55 n. 21, 103 S.Ct. 1625; *Davis v. Mason Co.,* 927 F.2d 1473, 1485 (9th Cir.1991). To support such an award, the jury must find either that the defendant acted with an evil motive or demonstrated reckless or callous indifference to the constitutional rights of the plaintiff. *Smith,* 461 U.S. at 56, 103 S.Ct. 1625; *Dubner v. City and County of San Francisco,* 266 F.3d 959 (9th Cir. 2001); *Mitchell,* 75 F.3d at 527 n. 7; *Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th Cir.1993).

For the reasons set forth above, Defendants are entitled to qualified immunity and are not subject to punitive damages in connection with the present complaint. Moreover, even if Defendants were not entitled to qualified immunity, Plaintiff's complaint fails to allege facts or circumstances which would justify the award of punitive damages. Specifically, Plaintiff's First Amended Complaint fails to state that Defendants "acted with an evil motive or demonstrated reckless or callous indifference to the constitutional rights of the plaintiff." As such, the Court recommends that Plaintiff's request for punitive damages be DENIED.

### Conclusion

For the reasons set forth above, the Court recommends that Defendants' Motion to Dismiss be GRANTED without prejudice. To state a viable federal complaint under 35 U.S.C. § 1983, Plaintiff must allege specific instances and events in which Defendant violated a clearly established constitutional right.

This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties by **October 28, 2005.** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed by **November 11, 2005.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.